## City Insurance Co. *versus* Bricker.

1. A paper was drawn up in lead-pencil, and purported to contain statements made by an insured and taken down by the agent of the insurance company at the office of the company at the time the policy was applied for. The application on its face was not to the insuring company, but was drawn on the blank of another company. The insured signed this paper, and a policy issued to him which referred by number to this paper. The court below instructed the jury that this paper was not to be regarded as a formal application, but simply as a memorandum. *Held*, that this was error.

2. Per GORDON, J. We can see no good reason why an application for insurance may not be drawn in lead-pencil.

October 29th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ. PAXSON and GREEN, JJ., absent.

Error.

Error to the Court of Common Pleas of *Westmoreland county*: Of October and November Term 1879, No. 307.

Assumpsit by David Bricker, against the City Insurance Company, of Pittsburgh, Pa., on a policy of fire insurance, to recover for a loss.

The policy contained the following: "It is a condition of this insurance that, if an application, survey, plan or description of the property herein insured is referred to in this policy, such application, survey, plan or description shall be considered a part of this contract, and a warrantee by the assured; and any false representation by the assured of the condition, situation or occupancy of the property, or any omission to make known every fact material to the risk, or an over valuation, or any misrepresentation whatever, either in a written application or otherwise, avoids the policy."

The court below, at the trial, inter alia, charged:

"The defendants say, that whether David Bricker, the plaintiff, wilfully misrepresented the value of the property, or honestly believed the property to be worth $1500, and the fixtures worth $250 at that time—whether the representations were false or true in his belief, there being a warranty, if the same turned out to be false, that there can be no recovery. [Reading this policy as carefully as we can, and taking into consideration all the facts in the case, we are not inclined to look upon this paper, which they say is the application, as a part and parcel of this policy of insurance. It is true that, in the body of the policy itself, an application No. 15,515 is referred to. If the application were a formal, properly prepared paper, drawn up to make it a part of this policy, the defendants would be entitled to the warranty as set forth in this policy. But when we come to look at the paper which purports to be the application, under all the evidence in the case, we are inclined to think that, at the time this paper was made out, it was looked upon as a

[City Ins. Co. *v.* Bricker.]

mere memorandum, lacking the ingredients of a formal application, so formal that it would become a part and parcel of this policy of insurance. This policy itself is very formal, carefully prepared, properly signed, and bears the seal of the company. But this paper is drawn up in lead pencil, and purports to contain the statements made by Bricker, and taken down by the agent at the time the policy was spoken of at the office. It is an application on its face, not to the City Insurance Company, but to the Fire Association of Philadelphia. That may have been a mistake, perhaps; but we mention this fact to bear us out in saying that the paper was not looked upon as a formal application, but simply as a memorandum. When Bricker called on Smith in his office, he took his lead pencil and this printed blank of a different company, and made a memorandum of the representations and declarations of Bricker. The paper was not signed at that time, but was signed at the time the price of the policy was paid and the policy was lifted. Therefore, from the paper itself, and from the testimony of Smith, we are not inclined to look upon this paper as a formal application, but simply as a memorandum made by the agent of the company at the time the policy was procured, or at the time the insurance was taken.''']

Verdict for plaintiff for $500. Defendant took this writ, and alleged that the court erred in the portion of the charge noted above in brackets.

*Edgar & Frank Cowan* and *G. L. B. Fetterman,* for plaintiff in error.—In no essential part, nor as a whole, was it denied by plaintiff, that the paper contained the statements which he had made to the agent of the company, and upon which the policy had been secured. The fact that the paper contains the representations of Mr. Bricker, makes it his application ; and it matters not that the paper is written in lead pencil, and is seemingly not as formal and as carefully prepared as the policy. Nor does it matter whether the applicant signed the paper or not, thus formally making the clerical act of the agent of the company his own, as long as it contains his representations ; but in this case, with irresistible force, the application is demonstrated to be the formal and the carefully prepared application of the assured, from the fact that he did not affix his signature until after he had had in his possession the policy long enough to learn from it that the application, No. 15,515 was made a part of the policy, and that any misrepresentation made therein, with intent to defraud or otherwise, would avoid the policy. The plaintiff in error insists upon the recognition of the application in this case, bearing even number with that referred to in the policy, as coming within the meaning of the terms of the policy, namely, a warranty by the assured.

[City Ins. Co. *v.* Bricker.]

*McAfee & Atkinson* and *John F. Wentling*, for defendant in error.

Mr. Justice GORDON delivered the opinion of the court, November 10th 1879.

There is but a single point in this case, that, however, is a material one. The learned judge of the court below, when speaking of the application, says : " But this paper is drawn up in lead pencil, and purports to contain statements made by Bricker, and taken down by the agent at the time the policy was spoken of at the office. It is an application, on its face, not to the City Insurance Company, but to the Fire Association of Philadelphia. That may have been a mistake, perhaps ; but we mention this fact to bear us out in saying that the paper was not looked upon as a formal application, but simply as a memorandum." We cannot assent to this conclusion. True, it was drawn in pencil, but as wills, notes, &c., may be drawn in pencil (Myers *v.* Vanderbelt, 3 Norris 510), we can see no good reason why an application for insurance may not be drawn in the same manner. It is also true that it was written in the blank form of another company, but its identification was unmistakable from the number endorsed upon it, and from the property proposed to be insured. Surely, Bricker, with the policy in his possession, could not be mistaken as to what the application was intended to cover. In that policy was a reference to the application by number, and if he could mistake or overlook that, he could neither mistake nor overlook the fact that in the policy he had an assurance of the same goods mentioned in the application. Knowing this, and having had ample time and opportunity to acquaint himself with the contents of the policy, he signed the paper, under consideration, and so covenanted with the company that his exposition of the facts and circumstances therein set forth were true.

Furthermore, it is not reasonable that if the paper was but a memorandum drawn for the convenience of the agent, it should have been signed by Bricker. This act certainly meant an adoption by him of that paper for some purpose, and that purpose could have been none other than that expressed in the instrument itself; that is to say, to bind the applicant to the truth of his own allegations.

The judgment is reversed and a new *venire* ordered.